### SIMMONS, et al v. FLORIDA RACING COMMISSION, et al.

Circuit Court, Dade County.

November 19, 1952.

Robert C. Lane, Miami, for plaintiffs.

Richard W. Ervin, Attorney General, Tallahassee, John C. Reed, Assistant Attorney General, Miami, and Manuel M. Garcia, Tampa, for the Racing Commission.

CHARLES A. CARROLL, Circuit Judge.

This cause came on to be heard before me on application of the plaintiffs to enjoin the racing commission from enforcing against them its rule no. 460-A. Notice of hearing was given and counsel for the commission and an assistant attorney general were present at the hearing. The defendant racing commissioners filed a motion to dismiss, which was argued at the same time.

Section 550.181, Florida Statutes 1951, expressly designed to eliminate bookmakers and persons with certain criminal records from the ranks of *racing permit holders and their employees,* made provision for them to supply pictures and fingerprints to the commission at such times as the commission should fix by rule.

It must be noted that this statute related only to holders of permits, that is, owners and operators of tracks and their employees, and it did not cover the *employees of horse or dog owners.*

The commission made its rule no. 460-A requiring permit holders and their employees to submit fingerprints, etc. at such time as the commission should direct, and also included the employees of the horse or dog owners and other persons who might work on the premises in the following language—

and all trainers, jockeys, apprentices, grooms, exercise boys, managers, agents, jai-alai players, ball boys, blacksmiths, veterinarians, and like persons who actively participate in the racing or jai-alai activities of any such permit holders.

It appears that the plaintiffs are horse trainers who customarily are employed by horse owners and not employees of a track operator or holder of a "permit." They complain that they cannot obtain an occupational license here without submitting to fingerprinting and being photographed under this rule. They challenge the constitutionality of the Fingerprint Act of 1951 on a number of grounds, and they challenge the validity of the rule.

An administrative ruling by the Attorney General in the form of an opinion letter to the commission dated November 6, 1952 was filed, and, based thereon, the attorney for the commission conceded that the fingerprint statute of 1951 covered operators and their employees—but did not cover the plaintiffs as employees of horse owners.

Without that concession by counsel, a reading of the statute makes it clear that such is the case. It follows that the commis-

sion's rule as it relates to the plaintiffs is not predicated on the statute, but is based on the commission's rule-making power as set out in section 550.02(4). A reading of the statute granting the rule-making power shows that it was expressly a mandatory direction to the commission to make such rules as should be necessary to control racing and for and in connection with the holding and conducting and operating of race tracks and race meets.

The inclusion in this rule for fingerprinting and photographing of persons connected with the racing activities, in addition to those provided for in the fingerprint statute, represents an action of the commission under its rule-making power, in compliance with the mandate to make rules for the control and conduct of racing in Florida.

Since, therefore, the 1951 statute for fingerprinting does not affect or involve the plaintiffs, the court should not and does not consider or pass upon any questions as to the validity or constitutionality of that Act. It will be soon enough to evaluate the various challenges made against the Act when it is called into controversy by a proper plaintiff in an appropriate proceeding.

The bill of complaint in this case fails to make any sufficient showing that the rule for fingerprinting, based solely on the commission's rule-making power, is unreasonable or arbitrary, or not reasonably suited toward the ends for which the power was granted and properly to be exercised.

Decisions tell us that where the right of the commission to make a rule is in the balance, a ruling favoring its validity will receive support from such factors as the commission's wide discretion in its rule-making power, the fact that the business is legalized professional gambling, a privileged occupation which otherwise would not be permitted, and the need for strict regulation as indicated by the mandatory wording of the rule-making power. In addition, in this instance, legislative sanction has been given to the device of requiring fingerprinting and photographing as an aid to identifying persons engaged in racing activities—through the 1951 Act applying it to certain classes of persons on the tracks.

But the reasonableness and salutary purpose and object of this rule as it relates to plaintiffs are so clear that it is not necessary to summon to the aid of the court those canons of construction and presumptions favoring this action by the commission.

The allegations of the bill are lacking in a showing of any hardship or irreparable injury to plaintiffs under the rule which could invoke the injunctive authority of this court in their favor.

The bill disclosed that the commission is arranging to have the fingerprints and new photographs of all applicants for licenses taken under its rule—to be paid for by the applicants at a price of $1.75 each. It further appeared by admissions of counsel that all such employees are required to purchase an occupational license, and that the maximum as fixed by the state law is charged.

When the commission requires a person to pay some party $1.75 for fingerprinting and photographing, in addition to the full legal cost of his license, it is requiring him to pay for the license an amount in excess of the legal maximum. The commission under its rule may take the fingerprints and have a photograph of each worker at the tracks, but there is no more reason why it should require the worker to pay for that—over and above the full cost of his occupational license—than there would be to require the worker to buy the commissioner's paper on which he applies for his occupational license or the ink with which his occupational license is signed.

Accordingly, the plaintiffs' application for injunction is denied and plaintiffs' bill is dismissed, on condition that the fingerprinting and photographing requirements under the rule in question shall not be at the cost of the applicant or employee who is affected by the rule, but shall be at the cost of the commission.

Jurisdiction is reserved expresssly in this case to entertain an application for an injunction against the operation of the rule by amended bill, or by petition filed herein, at the instance of the plaintiffs or of anyone similarly situated to them, in the event that there is imposed upon them after the date of the entry of this order the cost of photographing and fingerprinting, and unless such cost of photographing and fingerprinting is absorbed or paid by the state or commission.